# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore (Northern) Division

| | | |
|---|---|---|
| ROBERT CRAMER, | * | |
| 4401 Dulaney Court | | |
| Glen Arm, MD 21057 | * | |
| | | |
| Plaintiff, | * | CIVIL ACTION NO.: |
| | | |
| vs. | * | |
| | | |
| ELASTICSEARCH, INC., | * | |
| Serve On: | | |
| Corporate Service Company | * | |
| 7 St. Paul Street | | |
| Suite 800 | * | |
| Baltimore, MD 21202 | | |
| | * | |
| Defendant. | | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

COMES NOW Plaintiff Robert Cramer before this Honorable Court and sues Defendant Elasticsearch, Inc. for claims of discrimination, retaliation, wrongful termination, breach of contract and wage and hour claims as outlined below, pursuant to The Age Discrimination and Employment Act of 1967 ("ADEA"), and the Maryland Human Rights Act (Md. Code Ann. SG § 20-601 *et seq.),* the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl., §§ 3-401 *et seq*.; the Maryland Wage Payment and Collection Law §§ 3-501 *et seq.* ("MWPCL") and the commonlaw of Maryland.

## JURISDICTION AND VENUE

1.      This Court has Diversity Jurisdiction of the above matter pursuant to 28 U.S.C. § 1332(a)(1) in that diversity exists between Plaintiff and Defendants, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

2.      In addition, Plaintiff's federal claim under the Age Discrimination and Employment Act of 1967, 29 USC 623, supports federal question jurisdiction of this Court under 28 USC §1331.

3.   Plaintiff's claims under the law of the State of Maryland rely on substantially similar facts as do the federal claims aforementioned, and accordingly fall under the jurisdiction of this Court pursuant to 28 USC §1337.

4.   All events described hereunder occurred within this judicial District and venue accordingly lies in this Court.

5.   The Maryland state law claims set forth herein are so related to and intertwined with Plaintiff's claims under the federal law that they form a part of the same case and controversy. Therefore, this Court has supplemental jurisdiction over the Maryland state law claims pursuant to 28 U.S.C. § 1367(a).

## THE PARTIES

6.   Plaintiff Robert Cramer ("Mr. Cramer") is an adult resident of Baltimore County, Maryland, and was from on or about January 15, 2019 until on or about April 6, 2020 employed by Elasticsearch, Inc., as an Sr. Solution Architect. Mr. Cramer's date of birth is October 9, 1968 and he is 53 years old.

7.   Defendant Elasticsearch, Inc. ("Elastic") corporation registered to do business in Maryland, with its principal office located at Suite 350, 800 W. El Camino Real, Mountain View, CA 94040. Upon information and belief, Elastic had in excess of 500 employees during all times relevant in the Complaint and in each of 20 calendar weeks in the current or preceding year.

8.   At all times material to this action, Defendant was an employer within the meaning of The Age Discrimination In Employment Act of 1967, as well as MWHL and MWPCL, Md. Code Ann., Lab. & Empl., §§ 3-101(c), 3-401(b) and 3-501(b).

9.   At all times material to this action, Plaintiff was an "employee" and in the "employ" of

{00192316.1}                                                                 25

Defendant within the meaning Age Discrimination In Employment Act of 1967, as well as MWHL and MWPCL, Md. Code Ann., Lab. & Empl., §§ 3-101(c), 3-401, *et seq.* and 3-501, *et seq*.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TIMELY FILING

10.  In response to conditions of age discrimination at Elastic and retaliation against him by Elastic and his ultimate termination by Elastic, Mr. Cramer filed a timely complaint with the Baltimore Field Office of the Maryland Commission on Civil Rights ("MCCR") on or about September 15, 2020; but because of the pandemic or other administrative difficulties experienced over the last two years by said Commission, all of which were beyond the control of Plaintiff, said Commission did not act on said filing until earlier this year; has ultimately filed charges against Elastic under charge numbers MCCR #2203-0121 and EEOC #12F-2022-00444C; but has not provided Plaintiff with a Right to Sue Letter despite numerous requests. Plaintiff has complied with all administrative conditions precedent to filing this action.

## FACTS COMMON TO ALL COUNTS

11.  Elastic is business that markets and sells a search engine based on the Lucene library. It provides a distributed, multitenant-capable full-text search engine with an HTTP web interface and schema-free JSON documents. Elastic is developed in Java and is dual-licensed under the source-available Server Side Public License and the Elastic license, while other parts fall under the proprietary (source-available) Elastic License. Official clients are available in Java, .NET (C#), PHP, Python, Apache Groovy, Ruby and many other languages. According to the DB-Engines ranking, Elastic is the most popular enterprise search engine.

12. On or about January 5, 2019, the parties entered a contract for employment (the "Employment Agreement" or "EA") and had further communications regarding Cloud Bonuses and Stock Options.   Under the terms of the EA, Elastic agreed to (a) employ Cramer as a full time Solution

Architect beginning January 22, 2019, (b) pay him an annual salary of $182,000, (c) pay him up to an additional $78,000 in commissions based on target earnings of $260,000, (d) pay him a $10,000 Cloud Bonus for achieving certain goals in two successive quarters and (e) provide him with approximately $100,000 in restricted stock units ("RSUs").

13.   Plaintiff Cramer commenced employment with Elastic as an Sr. Solution Architect on or about January 15, 2019 and he was told shortly thereafter that he would eventually transition into a management position.

14.   All Elastic employees are given access to track their earned commissions and bonuses online through software programs called Aviso and Salesforce.  Each Solution Architect has access to the Aviso and Salesforce.

15.   Mr. Cramer reported in his duties during times relevant to Kevin Kunz (and others), a supervisory manager at Elastic.

16.   During the course of his employment with Elastic, Mr. Cramer received favorable reviews of his performance, and he would routinely meet or exceed his hourly targets and company goals. Examples include but are not be limited to:

     a.   On or about November 5, 2019, Kevin Kunz stated on a team call that "Mr. Cramer was doing a great job and would start to put him in the quote limelight and move him up for promotion."  Kunz further stated that Mr. Cramer would be receiving a portion of restricted stock units ("RSUs") for going above and beyond his normal job duties, for his weekly meetings with new and existing employees and for his presenting workshops out of territory for other sales representatives.   However, Cramer never received the RSUs as promised.

     b.   On or about December 16, 2019, Kunz mentioned on a call that Mr. Cramer was

doing a great job but needed to have a different look.  In that same call, Kunz

emphasized that Plaintiff should try harder to "fit in and not to look so old with

younger sales representatives";

17. During the course of his employment at Elastic, Mr. Cramer became increasingly aware of

problems at Elastic involving apparent age discrimination against himself and others.

18. In the course of his employment at Elastic, Mr. Cramer began experiencing blatant age

discrimination.   Examples include but are not limited to the following:

a.   On or about December 16, 2019, Elastic through Kunz told Plaintiff to try harder to

"fit in and not to look so old with younger sales representatives";

b.   Elastic unfairly and frequently restructured Mr. Cramer's initial compensation

agreement in a way that substantially reduced his commission/compensation;

c.   Elastic unfairly and frequently changed Mr. Cramer's sales teams and/or territories

in a way that substantially reduced his commissions/compensation;

d.   During this same period, Elastic appeared to be honoring its compensation

agreements with other younger Solutions Architects and not changing their sales

teams and/or territories in the same way;

e.   On or about March of 2019, while staying at an Airbnb with Kevin Kunz, Mr. Kunz

told Mr. Cramer that "You are an older Senior Solutions Architect that needs to fit

in to Elastic … Elastic's workforce is based out of Silicon Valley and the staff is

much younger." Kunz also mentioned that Mr. Cramer should dress younger by

wearing more T-shirts and tennis shoes to events when he goes in two different

offices;

f.   In fact, following his complaints of unfair treatment, Kevin Kunz would frequently

remind Mr. Cramer that he was at the older stages in his career and that he had been

unemployed for over a year prior to coming to Elastic.  His comments were intended

to impliedly threaten Mr. Cramer with possible termination if he didn't go along;

19. In the course of his employment at Elastic, following his complaints to HR and other supervisory personnel at Elastic regarding his unfair treatment, Mr. Cramer began experiencing a hostile work environment and/or retaliation.   Examples include but are not limited to the following:

a.  Elastic unfairly and frequently restructured Mr. Cramer's initial compensation agreement in a way that substantially reduced his commissions/compensation;

b.  Elastic unfairly and frequently changed Mr. Cramer's sales teams and/or territories in a way that substantially reduced his commissions/compensation;

c.  When Mr. Cramer reported the unfair treatment and manipulation of his commissions/compensation to Human Resources, his coworkers and supervisors told him on more than one occupation that "HR is not your friend"

d.  Upon information and believe, over the course of Mr. Cramer's employment, Elastic failed to pay Mr. Cramer approximately $95,000.00 in earned commissions:

e.  Elastic further refused to compensate Mr. Cramer for a $10,000 Cloud Bonus that had been promised to him and which he had earned after achieving goals for two successive quarters;

f.  Elastic further refused and failed to pay Mr. Cramer approximately $100,000 in restricted stock units;

g.  Elastic then restricted Mr. Cramer's access to the Aviso and Salesforce commissions tracking programs so that he could no longer track his commissions.   At the same time, all other younger employees continued to have access to these programs;

h.   On or about February 9, 2020, Elastic placed Mr. Cramer in a "performance plan" (i.e. a disciplinary measure) without cause while his similarly situated young colleagues were not placed on such a plan;

i.   On or about February 11, 2020, in response to Mr. Cramer's airing his concerns with his Supervisors and HR, Kunz stated you are "overworked and overpaid," and that "he knew he had put me through a meat grinder" and would rectify the situation in the next few months.   Kunz then said "this company is bigger than you and you should stop asking for sales compensation."  Kunz further told Mr. Cramer that "Jake Vernon (another Team Member) is a killer with a gun permit and knows how to bury bodies" in a clear attempt to intimidate Mr. Cramer;

j.   On or about February 18, 2020, Elastic abruptly moved Mr. Cramer off of a successful project and transitioned the deal to another team member days before it was due to close. The move again caused Mr. Cramer to lose substantial commissions on that deal;

k.   Encountering no success in his redress of his grievances with HR and other supervisors, on or about March 3, 2020 Mr. Cramer reached out to Leah Sutton and to the Global VP of the Legal Department.   Again, no response;

l.   On or about March 6, 2020, Mr. Cramer emailed David O. Jones (Regional VP), Jeff Abbott (Solutions Architect Regional Man.), Phu Nguyen (Global Sale Compensation & Analytics) and Karen Penn (HR) who initially agreed to have a meeting to discuss Mr. Cramer's grievances, but then abruptly cancelled the meeting at the eleventh hour.  To date Mr. Cramer's concerns have never been acknowledged or addressed;

{00192316.1}                                           25

m. On or about March 23, 2020, Elastic further discriminated, harassed and retaliated against Mr. Cramer in its uneven enforcement of company policies, expressly reprimanding Mr. Cramer for supposed violations of a "Code of Business Conduct and Ethics and Information Security Program" policy violations, while not enforcing such policies against similarly situated younger colleagues, which reprimand was used as a "pretext" for his termination on or about April 6, 2020.

20. Notwithstanding the lack of evidence of such policy violations or any meritorious reason whatsoever, Elastic terminated Mr. Cramer on April 6, 2020, a substantial motivation of which was age-based animus.

## SPECIFIC AVERMENT OF MALICE

21. Plaintiff specifically alleges that Defendant acted with malice, i.e., evil intent, intent to injure, intent to retaliate and/or intent to oppress.

22. Plaintiff specifically requests punitive damages against Defendant to the maximum extent permitted by applicable federal or state law on each count for which such damages may be authorized.

## COUNT I
## Discrimination – Age Discrimination in Employment Act of 1967

23. The preceding and subsequent paragraphs are incorporated by reference as if restated herein in full.

24. Elastic additionally discriminated against Mr. Cramer by establishing policies and practices of disparate treatment in terms of employee benefits, commissions, duties and conditions of employment on the basis of his age.

25. As a result of this discrimination, Mr. Cramer suffered humiliation, embarrassment, income, interference with his ability to perform his professional duties effectively as well as the loss of the

benefits of his bargain and of a non-discriminatory workplace.

26. WHEREFORE, Plaintiff respectfully demands a judgment against Defendant Elastic for:

    a.  back pay in an amount to be determined and in an amount no less than the current damages estimated to be Two Hundred Fifty Thousand Dollars ($250,000.00);

    b.  compensatory damages for front pay in excess of Seventy-Five Thousand ($75,000);

    c.  punitive damages as allowed by applicable law;

    d.  equitable relief in the form of an injunction directing Defendant Elastic and Interested Elastic to re-employ Cramer within 45 days of an Order of this Honorable Court or, in the alternative, to award to Plaintiff front pay in the amount of Five Hundred Thousand Dollars ($500,000.00);

    e.  costs and an attorney fee award no less than reasonable and consistent with applicable law and rule; and

    f.  such other relief as justice and good order may demand.

## COUNT II
## Discrimination - Maryland Human Rights Act

27. The preceding and subsequent paragraphs are incorporated by reference as if restated herein in full.

28. Elastic and its employees/agents were each an "employer" under Md. Code Ann. SG §20-601(d)(1)(ii).

29. Elastic discriminated against Mr. Cramer by establishing and enforcing practices and policies of disparate treatment in terms of employee benefits, duties and conditions of employment on the basis of his age.

30. Elastic and its employees/agents discriminated against Mr. Cramer by refusing arbitrarily

to consider and respond to Mr. Cramer's claims of disparate treatment within the scope of their duties, and ultimately by firing Mr. Cramer.

31.  As a result of this illegal conduct, Mr. Cramer suffered damage to his income and benefits, humiliation, embarrassment and interference with his ability to perform his professional duties effectively.

32.  WHEREFORE, Plaintiff respectfully demands a judgment against Defendant Elastic for:

    a.  back pay in an amount to be determined and in an amount no less than the current damages estimated to be Two Hundred Fifty Thousand Dollars ($250,000.00), pursuant to Md. Code Ann. SG §§ 20-1009(b) and 20-1013;

    b.  compensatory damages for front pay, loss of dignity, humiliation and outrage in the amount of Five Hundred Thousand Dollars ($500,00000) pursuant to Md. Code Ann. SG §§ 20-1009 (b)(1)(iii), 20-1009(b)(3) and 20-1013;

    c.  punitive damages as allowed by law;

    d.  equitable relief in the form of an injunction directing Defendant Elastic to re-employ Cramer within 45 days of an Order of this Honorable Court or, in the alternative, to award to Plaintiff front pay in the amount of Five Hundred Thousand Dollars ($500,000.00) or such lesser amount approved by law, pursuant to Md. Code Ann. SG §§ 20-1009(b)(1);

    e.  court costs, expert witness costs and an attorney fee award no less than reasonable and consistent with Md. Code Ann.§ 20-1015; and

    f.  such other relief as justice and good order may demand, pursuant to Md. Code Ann. SG § 20-1009(b)(1)(iv).

## COUNT IV
## Retaliation Under The Age Discrimination and Employment Act

33.  The preceding and subsequent paragraphs are incorporated by reference as if restated herein in full.

34.  Mr. Cramer opposed employment practices and conditions by Elastic which appeared to him in good faith to constitute unlawful discrimination on the basis of a g e by Elastic in the conditions of employment.

35. Mr. Cramer made his opposition to those employment practices known on many occasions to Defendant and its agents/employees.

36. Mr. Cramer's notifications to the Defendant Elastic of his opposition to the apparently discriminatory practices and conditions at Elastic were substantially consistent withElastic's published employee policies and procedures.

37. In retaliation against Mr. Cramer's opposition to Elastic's apparently discriminatory practices and conditions, Elastic unfairly and frequently restructured Mr. Cramer's initial compensation agreement in a way that substantially reduced his commissions/compensation, restricted Mr. Cramer's access to track his commissions and bonuses on the Aviso and Salesforce platforms, impliedly threatened him with violence, ignored his complaints, removed him from deals with lucrative commissions, withheld bonuses, withheld stock options, unfairly enforced "company policies" against Mr. Cramer expressly reprimanding him for seemingly frivolous, innocuous and pretextual "Code of Business Conduct and Ethics and Information Security Program" policy violations while not enforcing such policies against similarly situated younger colleagues, and ultimately fired Mr. Cramer, all in violation of 29 USC 623(d) of the Act.

38.  As a result of the retaliatory firing, Mr. Cramer suffered financial losses, including but not limited to humiliation, indignity and outrage, the loss of full-time benefits and the interruption of his naturaland logical career progression.

39. As a result of the retaliatory firing, Mr. Cramer did not secure full-time, permanent

employment for a significant period of time, despite reasonable diligence in seeking work, and di

make reasonable efforts to mitigate his injury.

40. Elastic, through its employees/agents, inflicted its firing of Mr. Cramer with malice, i.e.

intent to injure, evil intent, intent to oppress and intent to retaliate against Mr. Cramer's lawful

opposition to apparently unlawful practices consistent with the express intent of the United States

Congress in enacting The Age Discrimination and Employment Act of 1967, and Title VII of the 1964

Civil Rights Act.

41. WHEREFORE, Plaintiff respectfully requests a judgment against Elastic in the

following amounts:

a. back pay in an amount to be determined and in an amount no less than the current damages estimated at Two Hundred Fifty Thousand Dollars ($250,000.00);

b. compensatory damages including but not limited to for front pay, loss of dignity, humiliation and outrage in the amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

c. punitive damages in an amount allowed by law;

d. equitable relief in the form of an injunction directing Defendant Elastic to re-employ Mr. Cramer within 45 days of an Order of this Honorable Court or, in the alternative, to award to Plaintiff front pay in the amount of Five Hundred Thousand Dollars ($500,000.00);

e. costs and an attorney fee award no less than reasonable and consistent with applicable law and rule; and

f. such other relief as justice and good order may demand.

**COUNT V**

{00192316.1}

## Retaliation under MD Human Rights Act Md. Code Ann., SG §20-606(f)

42.  The preceding and subsequent paragraphs are incorporated by reference as if restated herein in full.

43.  Elastic's employees acted as agents for Elastic and accordingly constitute "employers" in their own right under the Maryland Human Rights Act, Md. Code Ann. § 20-101 *et seq.* and § 20-601(d)(l)(ii).

44.  Mr. Cramer opposed employment practices and conditions by Elastic which appeared to him in good faith to constitute unlawful discrimination on the basis of age by Elastic in the conditions of employment.

45.  Mr. Cramer made his opposition to those employment practices known on many occasions to Defendant Elastic's employees/agents.

46.  Mr. Cramer's notifications to Elastic's employees/agents of his opposition to the apparently discriminatory practices and conditions at Elastic were substantially consistent with Elastic's published employee policies and procedures.

47.  In retaliation against Mr. Cramer's opposition to Elastic's apparently discriminatory practices and conditions, Elastic unfairly and frequently restructured Mr. Cramer's initial compensation agreement in a way that substantially reduced his commissions and compensation, restricted Mr. Cramer's access to the Aviso and Salesforce platforms so that he could not track his commissions, impliedly threatened him with violence, ignored his complaints, removed him from deals with lucrative commissions, withheld bonuses, withheld stock options, unfairly enforced "company policies" against Mr. Cramer expressly reprimanding him for seemingly frivolous and innocuous "Code of Business Conduct and Ethics and Information Security Program" policy violations while not enforcing such policies against similarly situated younger colleagues, and ultimately fired Mr. Cramer.

48. As a result of the retaliatory firing, Mr. Cramer suffered financial losses, humiliation,

indignity, outrage, the loss of full-time benefits and the interruption of his natural andlogical career progression.

49. As a result of the retaliatory firing, Mr. Cramer lost the benefits of full-time, permanent employment for a significant period, despite efforts to cure and mitigate that harm through reasonable diligence.

50. Elastic, through its employees/agents, inflicted its firing of Mr. Cramer with malice, i.e. intent to injure, evil intent, intent to oppress and intent to retaliate against Mr. Cramer's lawful opposition to apparently unlawful practices consistent with the express intent of the General Assembly of Maryland in enacting the Maryland Human Rights Act.

51. WHEREFORE, Plaintiff respectfully requests a judgment against Elastic in the following amounts:

   a. back pay in an amount to be determined and in an amount no less than the current damages estimated at Two Hundred Fifty Thousand Dollars ($250,000.00), pursuant to Md. Code ($250,000.00), pursuant to Md. Code Ann. SG §§ 20-1009(b) and 20-1013;

   b. compensatory damages for front pay, loss of dignity, humiliation and outrage in the amount of Five Hundred Thousand Dollars ($500,000.00) pursuant to Md. Code Ann. SG §§ 20- 1009(b)(1)(iii), 20-1009(b)(3) and 20-1013;

   c. punitive damages in an amount allowed by law;

   d. equitable relief in the form of an injunction directing Defendant Elastic to re-employ Cramer within 45 days of an Order of this Honorable Court or, in the alternative, to award to Plaintiff front pay in the amount of Five Hundred Thousand Dollars ($500,000.00) or such lesser amount approved by law, pursuant to Md. Code Ann. SG §§ 20-1009(b)(1);

{00192316.1}                                                   25

    e.   court costs, expert witness costs and an attorney fee award no less than reasonable and consistent with Md. Code Ann.§ 20-1015; and

    f.   such other relief as justice and good order may demand, pursuant to Md. Code Ann. SG § 20-1009(b)(1)(iv).

## COUNT VI
## Wrongful Termination under Maryland Law

52. The prior and subsequent paragraphs of this Complaint are incorporated as if restated herein in full.

53. In enacting the Maryland Human Rights Act, Md. Code Ann., SG § 20-101 *et seq.* generally and§ 20-606(f) specifically, the Maryland General Assembly established in clear articulation a public policy against discrimination on the basis of age and against retaliation against employees who:

    1.   oppose unlawful discrimination practices or policies;

    2.   make a charge of discrimination, or

    3.   participate in an investigation of alleged discrimination.

54. Maryland common law forbids employers the discharge of an employee when the discharge is made with the motivation for the discharge contravenes a clearly mandate of public policy of Maryland. *Adler v. American Standard,* 432 A.2d 464, 291 Md. 31 (1981); *Molesworth v. Brandon,* 672 A.2d 608,341 Md. 621 (1996).

55. Defendant Elastic wrongfully terminated Mr. Cramer's employment relationship with Elastic on April 6, 2020.

56. Notwithstanding pretexts to the contrary, Defendant Elastic terminated Mr. Cramer out of a retaliatory motivation in response to Mr. Cramer's persistent and vocal opposition to practices of Elastic that appeared discriminatory on the basis of age.

57. Elastic retaliated against Mr. Cramer for his alerting Elastic employees/agents of his

opposition to the discriminatory practices at Elastic, pursuant to Elastic employee policy manuals then in effect.

58. As a result of the aforementioned wrongful discharge, Mr. Cramer has suffered financial losses from loss of income and benefits, interruption of the natural progression of his career, indignity and outrage.

59. Defendant Elastic acted with malice, i.e. evil intent, intent to injure, intent to oppress and/or intent to retaliate.

60. WHEREFORE, Plaintiff respectfully requests a judgment against Defendant Elastic as follows:

    a.  back pay in an amount to be determined and in an amount noless than the current damages estimated at Two Hundred Fifty Thousand Dollars ($250,000.00);

    b.  compensatory damages including but not limited to front pay, loss of dignity, humiliation and outrage in the amount of Five Hundred Thousand Dollars ($500,000.00);

    c.  punitive damages;

    d.  costs and an attorney fee award no less than reasonable and consistent with applicable law and rule; and

    e.  such other relief as justice and good order may demand.

**COUNT VII**
**(Violations of the Maryland Wage and Hour Law, MD Code, Labor & Employment Article, §§3-401, et seq. ("MWHL") and Maryland Wage Payment and Collection Law, MD Code Labor & Employment Article, §§ 33-501, et seq. ("MWPCL"))**

61. The preceding and subsequent paragraphs are incorporated by reference as if restated herein in full.

62. Defendant was obligated to pay Plaintiff all wages earned for the work he performed and to

pay the statutory minimum and overtime wages for such work, MD Code Lab. & Empl. Art. §§ 3-413; 3-415.

63. Defendant failed and refused to pay the required wages and owe Plaintiff those wages earned for the work he performed.

64. More than two weeks have elapsed from the date on which the Defendant was required to have paid the wages.

65. Defendant may not deduct wages of Plaintiff unless explicitly authorized by Md. Code Ann., Lab. & Empl., § 3-501, et seq.

66. Defendant was further obligated to provide a statement of gross earnings and deductions from gross earnings for each pay period, MD Code Lab. & Empl. Art. §3-504(2).

67. Defendant's failure and refusal to pay the required wages due; and failure to provide a statement of gross earnings and deductions to Plaintiff was not the result of a bona fide dispute between Plaintiff and Defendant.

68. At all times material to the allegations set forth herein, Defendant was an "employer" within the meaning of the MWHL and MWPCL.

69. At all times material to the allegations set forth herein, Plaintiff was an "employee" in the "employ" of Defendant within the meaning of the MWHL and MWPCL.

70. WHEREFORE, Plaintiff prays that Judgment be entered against Defendant Elastic:

    a.  For the amount of unpaid minimum and overtime wages due to Plaintiff in the amount of Two Hundred Fifty Thousand $250,000.00 for employment from on or about January 15, 2019 until on or about April 6, 2020 pursuant to Md. Code, Lab. & Empl. Art., § 3-507.2(a);

    b.  For three times the wages due in the amount of Seven Hundred and Fifty Thousand

$750,000.00 that Defendant failed to pay Plaintiff pursuant to Md. Code, Lab.& Empl. Art., § 3-507.2(b);

c.   For attorney's fees, costs, and expenses of this action as a result of Defendant' failure to pay Plaintiff pursuant to Md. Code., Lab. & Empl. Art., § 3- 507.2(b);

d.   For such further relief as the Court may deem appropriate.

**COUNT VIII**
**Breach of Contract**

71. Plaintiff incorporates by reference and re-alleges the preceding and subsequent paragraphs of his Complaint as if fully alleged herein.

72. On or about January 5, 2019, the parties entered a contract for employment (the "Employment Agreement" or "EA") and had further communications regarding Cloud Bonuses and Stock Options.   Under the terms of the EA and, Elastic agreed to (a) employ Cramer as a full time Solution Architect beginning January 22, 2019, (b) pay him an annual salary of $182,000, (c) pay him up to an additional $78,000 in commissions based on target earnings of $260,000, (d) pay him a $10,000 Cloud bonus for achieving certain goals in two successive quarters and (e) provide him with approximately $100,000 in restricted stock units ("RSUs").

73. Defendant Elastic committed material breaches of the Employment Agreement by:

a.   unfairly and frequently restructured Mr. Cramer's initial compensation agreement in a way that substantially reduced his commission/compensation;

b.   unfairly and frequently changed Mr. Cramer's sales teams and/or territories in a way that substantially reduced his commissions/compensation;

c.   Upon information and believe, over the course of Mr. Cramer's employment, Elastic failed to pay Mr. Cramer approximately $95,000.00 in earned commissions:

d.   Elastic further refused to compensate Mr. Cramer for a $10,000 Cloud Bonus that had

{00192316.1}                                        23

been promised to him and which he had earned after achieving goals for two successive quarters;

e. Elastic further refused and failed to pay Mr. Cramer approximately $100,000 in restricted stock units;

f. Elastic then restricted Mr. Cramer's access to the Aviso and Salesforce commissions tracking programs so that he could no longer track his commissions. All other employees continued to have access to these programs;

g. On or about February 18, 2020, Elastic abruptly moved Mr. Cramer off of a successful project and transitioned the deal to another team member days before it was due to close. The move again caused Mr. Cramer to lose substantial commissions on that deal.

74. By reasons of the Defendant's breaches of said agreement as herein alleged, Plaintiff has suffered consequential damages in lost wages and other benefits.

75. WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages for front pay in the amount in excess of Seventy-Five Thousand Dollars $75,000.00 with interest, costs and fees including attorneys' fees, and other relief as justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff Robert Cramer respectfully demands a trial by jury on all issues that a jury may try under applicable law and rule.

Respectfully submitted,

_____/s/_____,
Patrick S. Cassidy, Esq. (Bar No. 2004270007)
Patrick S. Preller, Esq. (Bar No. 27545)
The Preller Law Firm, LLC
16 S. Frederick Street
Baltimore, Maryland 21202
Phone 410-539-0042
Fax 410-539-2955
ppreller@prellerlawfirm.com
*Attorneys for Plaintiff*